UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JIAN WU,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>EAN HOLDINGS, LLC dba ALAMO RENT-A-CAR, et al.,<br><br>　　　　　　Defendants. | Case No.: 5:13-cv-00188-PSG<br><br>**ORDER GRANTING-IN-PART GM'S MOTION FOR SUMMARY JUDGMENT**<br><br>**(Re: Docket No. 46)** |

Before the court is Defendant General Motors Company's ("GM") motion for summary judgment as to Plaintiff Jian Wu's (1) manufacturing defect, (2) design defect, (3) failure to warn, and (4) negligence claims.[1]  Wu opposes.  The parties appeared for a hearing.[2]  After considering the arguments, the court GRANTS GM's motion, but only IN-PART.

**I. BACKGROUND**

The tort claims in this case arise from an accident that occurred while Wu was in the Orlando-area on a business trip.[3]  On September 11, 2011, Wu went to place his luggage in the

---

[1] *See* Docket No. 46.

[2] *See* Docket No. 53.

[3] Docket No. 1 at ¶ 12.

1

Case No.: 5:13-cv-00188-PSG
ORDER GRANTING-IN-PART GM'S MOTION FOR SUMMARY JUDGMENT

truck of rented 2011 Chevy Malibu and as "he reached into the trunk to place his luggage down" the trunk of the Malibu "slammed down, striking Plaintiff's left hand and amputating the upper portion of Plaintiff's left middle finger."[4] Wu was transported to a local hospital, "where doctors tried unsuccessfully to re-attach Plaintiff's amputated finger."[5] Within four days of the accident Wu retained counsel and sent a preservation letter to the Alamo Rent-A-Car's administrative office in Orlando asking the company to preserve the vehicle and trunk struts and identified the car by its VIN number.[6] Alamo, however, did not comply. Despite the letter, Alamo replaced the particular strut at issue in November 2011 and in April 2012 sold the Malibu to a third party.[7]

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate only if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[8] The moving party bears the initial burden of production by identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a triable issue of material fact.[9] If the moving party is the defendant, he may do so in two ways: by proffering "affirmative evidence that negates an essential element" of the nonmoving party's claim, or by demonstrating "the nonmoving party's evidence is

---

[4] *Id.* at ¶ 16.

[5] *Id.* at ¶ 18.

[6] Alamo rented the Malibu to Wu. *See* Docket No. 1 at ¶ 20 ("On or around September 15, 2011, Plaintiff through his counsel sent a letter to the Alamo Defendants notifying them of the incident and requesting that they preserve the Vehicle as evidence. The letter to the Alamo Defendants included a description of the incident and photographs of the Vehicle, rental contract and defective spring.").

[7] Docket No. 47 at 5, n.3 ("Despite the letter, the Alamo Defendants apparently replaced the strut in November 2011 and sold the vehicle to a third party in or around April 2012.").

[8] Fed. R. Civ. P. 56(a).

[9] *See* Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

2
Case No.: 5:13-cv-00188-PSG
ORDER GRANTING-IN-PART GM'S MOTION FOR SUMMARY JUDGMENT

insufficient to establish an essential element of the nonmoving party's claim."[10] If met by the moving party, the burden of production then shifts to the non-moving party, who must then provide specific facts showing a genuine issue of material fact for trial.[11] The ultimate burden of persuasion, however, remains on the moving party.[12] In reviewing the record, the court must construe the evidence and the inferences to be drawn from the underlying evidence in the light most favorable to the nonmoving party.[13]

**B.   Manufacturing Defect**

"To establish a claim for manufacturing defect under a strict liability theory, a plaintiff has the burden of establishing that: (1) he has been injured by the product; (2) the injury occurred because the product was defective; and (3) the defect existed when the product left the hands of the defendant."[14] "To prove a negligent manufacturing claim under California law, a plaintiff must

---

[10] *Celotex*, 477 U.S. at 331.

[11] *See id.* at 330; *T.W. Elec. Service, Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) ("Rule 56 provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" (*quoting* Fed. R. Civ. P. 56(c)).

[12] *Celotex*, 477 U.S. at 330 (the "ultimate burden of persuasion" always "remains on the moving party").

[13] *See Anderson v. Liberty Lobby, Inc.,*, 477 U.S. 242, 248 (1986) (noting that "all evidence must be construed in the light most favorable to the party opposing summary judgment"); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (On "summary judgment the inferences to be drawn from the underlying facts" must "be viewed in the light most favorable to the party opposing the motion." (citations and quotations omitted)).

[14] *Tucker v. Wright Med. Tech., Inc.*, Case No.: 4:11-cv-03086-YGR, 2013 WL 1149717, at *10 (N.D. Cal. Mar. 19, 2013) (citing *Fender v. Medtronic, Inc.*, 887 F. Supp. 1326, 1333 (E.D. Cal. 1995) ("Under California law, the requirements for stating a claim for strict liability for a manufacturing defect are the same as for negligence: In a negligence case the plaintiff has the initial burden of establishing three things. The first is that he has been injured by the product." The "second is that the injury occurred because the product was defective;" and the "third is that the defect existed when the product left the hands" of the defendant.) (citing 6 B.E. Witkin, *Summary of California Law* § 1244 (9th ed. 1988)); *see also* CACI 1201 (entitled "Strict Liability—Manufacturing Defect—Essential Factual Elements").

first show that the product as delivered departed from the governing specifications."[15] Under California law, a manufacturing defect occurs where the "product differs from the manufacturer's intended result or from other ostensibly identical units from the same product line."[16] "If a product meets the design specifications applicable at the time of manufacture, there is no manufacturing defect."[17] But, "when a product comes off the assembly line in a substandard condition it has incurred a manufacturing defect."[18] In other words, a manufacturing defect claim posits "that a suitable design is in place, but that the manufacturing process has in some way deviated from that design."[19]

**C.   Design Defect**

"Generally, design defects exist where a product is built in accordance with its intended specifications, but the design itself is inherently defective."[20] A "product is defective in design either (1) if the product has failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner," or (2) if in light of relevant factors "the benefits of the challenged design do not outweigh the risk of danger inherent in such design."[21] In this case, Wu proceeds under the first prong, the consumer expectations test.

The California Supreme Court has explained the rationale of consumer expectations test as follows: "The purposes, behaviors, and dangers of certain products are commonly understood by those who ordinarily use them. By the same token, the ordinary users or consumers of a product

---

[15] *Carson v. Depuy Spine, Inc.*, 365 F. App'x 812, 814 (9th Cir. 2010).

[16] *Barker v. Lull Engineering Co., Inc.*, 20 Cal. 3d 413, 429 (1978).

[17] *In re Coordinated Latex Glove Litigation*, 99 Cal. App. 4th 594, 612-13 (2002).

[18] *Barker*, 20 Cal. 3d at 429.

[19] *In re Coordinated Latex Glove Litig.*, 99 Cal. App. 4th 594, 613 (Cal. Ct. App. 2002).

[20] *Tucker*, 2013 WL 1149717, at *4 (citing *Barker*, 20 Cal.3d at 429).

[21] *Barker*, 20 Cal.3d at 418.

4
Case No.: 5:13-cv-00188-PSG
ORDER GRANTING-IN-PART GM'S MOTION FOR SUMMARY JUDGMENT

may have reasonable, widely accepted minimum expectations about the circumstances under which it should perform safely.  Consumers govern their own conduct by these expectations, and products on the market should conform to them."[22]  "The crucial question in each individual case is whether the circumstances of the product's failure permit an inference that the product's design performed below the legitimate, commonly accepted minimum safety assumptions of its ordinary consumers."[23]  This theory of liability is "reserved for cases in which the everyday experience of the product's users permits a conclusion that the product's design violated minimum safety assumptions, and is thus defective."[24]  "It is not appropriate for cases involving the 'behavior of several obscure components' or 'complex circumstances' beyond a normal user's frame of reference."[25]

D.     **Failure to Warn**

"In California, a defendant manufacturer can be held strictly liable for failure to warn if the plaintiff proves the following: '(1) the defendant manufactured, distributed, or sold the product; (2) the product had potential risks that were known or knowable at the time of manufacture or distribution, or sale; (3) that the potential risks presented a substantial danger to users of the product; (4) that ordinary consumers would not have recognized the potential risks; (5) that the defendant failed to adequately warn of the potential risks; (6) that the plaintiff was harmed while using the product in a reasonably foreseeable way; (7) and that the lack of sufficient warnings was a substantial factor in causing the plaintiff's harm.'"[26]  With respect to a known or knowable risk,

---

[22] *Soule v. Gen. Motors Corp.*, 8 Cal. 4th 548, 566-67 (1994).

[23] *Id.* at 568-69.

[24] *Id.* at 567.

[25] *Massok v. Keller Indus., Inc.*, 147 F. App'x 651, 658 (9th Cir. 2005) (*quoting Soule*, 8 Cal. 4th at 570).

5
Case No.: 5:13-cv-00188-PSG
ORDER GRANTING-IN-PART GM'S MOTION FOR SUMMARY JUDGMENT

the plaintiff must prove that "the defendant did not adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution."[27]  "Generally, the purpose of requiring adequate warnings is to inform consumers about a product's hazards of which they are unaware, so that they may either refrain from using the product altogether or avoid the danger by careful use."[28]  "The duty to warn continues for as long as the manufacturer is manufacturing and distributing the product."[29]  On the other hand, there "is no duty to warn of known risks or obvious dangers."[30]  "In most cases" the "adequacy of a warning is a question of fact for the jury."[31]

### III. DISCUSSION

#### A.   Manufacturing Defect

With respect to Wu's manufacturing defect theory, the Ninth Circuit's consideration of a missing circuit breaker in *Triton Energy Corp v. Square D Company* is instructive.[32]  The case involved an appeal of a summary judgment ruling in favor of the defendant, Square D Company. The facts of the case centered around a fire at an aircraft hangar allegedly caused by a "still missing circuit breaker allegedly manufactured by Square D Company several decades ago."[33]  Before trial the plaintiff in the case "arranged for a testing of the circuit breaker," but unfortunately, the wrong

---

[26] *Tucker*, 2013 WL 1149717, at *12 (*quoting Rosa v. City of Seaside*, 675 F. Supp. 2d 1006, 1011 (N.D. Cal. 2009) (citing CACI 1205 [entitled "Strict Liability—Failure to Warn–Essential Factual Elements"])).

[27] *Rosa*, 675 F. Supp. 2d at 1012 (citing *Anderson v. Owens–Corning Fiberglas Corp.*, 53 Cal. 3d 987, 1002 (1991)).

[28] *Tucker*, 2013 WL 1149717, at *13 (citing *Taylor v. Elliott Turbomachinery Co., Inc.*, 171 Cal. App. 4th 564, 577 (2009); *Anderson*, 53 Cal. 3d at 1003).

[29] *Valentine v. Baxter Healthcare Corp.*, 68 Cal. App. 4th 1467, 1482 (1999).

[30] *Chavez v. Glock, Inc.*, 207 Cal. App. 4th 1283, 1304 (2012).

[31] *Jackson v. Deft, Inc.*, 223 Cal. App. 3d 1305, 1320 (1990).

[32] 68 F.3d 1216 (9th Cir. 1995).

[33] *Id.* at 1218.

6
Case No.: 5:13-cv-00188-PSG
ORDER GRANTING-IN-PART GM'S MOTION FOR SUMMARY JUDGMENT

circuit breaker was tested.[34] After the testing, but before the plaintiff discovered it had tested the wrong circuit breaker, the hangar was razed on account of asbestos contamination.[35] The court then weighed whether summary judgment was warranted, because the circuit breaker could not be examined.

The court identified the "fundamental problem" confronting the plaintiff: despite its casualty loss it "failed to show that it could demonstrate to a jury by a preponderance of the evidence that its loss ought to be shifted to Square D."[36] Although it was true that "Square D could not demonstrate by a preponderance of the evidence that its circuit breaker was not defective when it left" its plant, that was irrelevant because the "ultimate burden" remained on the plaintiff.[37] The court held the plaintiff "simply failed to present sufficient probative evidence that would require a jury decision. A jury should not be asked to evaluate the credibility of experts concerning the defectiveness of a circuit breaker and its container when it left the hands of Square D, which the experts have neither seen nor can see, and which was manufactured more than two decades ago. These circumstances would impose upon the jury the unenviable task of listening to two expert's opinions unsupported by any physical evidence to bolster either opinion."[38] Because the plaintiff "failed to establish the existence of an element essential to its case on which it will bear the burden of proof" at trial, summary judgment was warranted.[39]

---

[34] *Id.*

[35] *See id.* at 1218-19.

[36] *Id.* at 1222.

[37] *Id.*

[38] *Id.*

[39] *Id.*

7
Case No.: 5:13-cv-00188-PSG
ORDER GRANTING-IN-PART GM'S MOTION FOR SUMMARY JUDGMENT

GM argues that, as in *Square D*, Wu's "expert did not examine the strut and therefore has not identified any latent or other kind of defect when it left GM's possession, custody or control."[40] More troubling, unlike the expert in *Square D* who opined unequivocally that a manufacturing and design defect existed, Wu's expert "adopted a slightly different approach–maybe it was a latent defect, or maybe it wasn't. In short, [the expert] correctly agrees that without an examination, he cannot state if the strut was not working properly due to a material or manufacturing defect or alternatively, some unidentified Alamo renter or employee damaged it."

Wu responds by suggesting he "need not even prove a specific defect; he may discharge his burden by showing an unexplained occurrence and eliminating all reasonable explanations for the occurrence other than the existence of a defect."[41] Wu nonetheless acknowledges it "is incumbent upon the plaintiff to negate other reasonable explanations for the malfunction because evidence of a malfunction is not a substitute for the need to establish that the product was defective. A malfunction is evidence that a defect existed and eliminates only the need to identify a specific failure."[42] The "malfunction theory in no way relieves the plaintiff of the burden of proving a defect: it simply allows him to show that a defect is the most likely explanation for an accident by eliminating other reasonable explanations. The plaintiff still must satisfy the burden of proving that a defect is the most likely cause of the accident, and therefore must negate the likelihood of other reasonable causes."[43] It is true that under California law, "a defect in manufacture or design defect must be affirmatively established, and an inference of defect solely from the fact of an

---

[40] Docket No. 48 at 5.

[41] *Ocean Barge Transp. Co. v. Hess Oil Virgin Islands Corp.*, 726 F.2d 121, 124 (3d Cir. 1984) (citing Lindsay, 460 F.2d at 638-40; *Daleiden v. Carborundum Co.*, 438 F.2d 1017, 1022 (8th Cir. 1971); *Greco v. Bucciconi Engineering Co.*, 407 F.2d 87, 89-90 (3d Cir. 1969)).

[42] *Id.* (internal quotations and citations omitted).

[43] *Id.* at 125 (internal citations omitted).

8
Case No.: 5:13-cv-00188-PSG
ORDER GRANTING-IN-PART GM'S MOTION FOR SUMMARY JUDGMENT

accident cannot be drawn."[44]  However, "this rule does not preclude Plaintiff from proving a manufacturing defect using only circumstantial evidence."[45]  Wu urges there is sufficient circumstantial evidence to raise a triable issue of fact as to whether the strut was (1) manufactured by GM and (2) contained a manufacturing defect.

As an initial matter, the court notes that GM cited *Square D* for the first time in its reply brief, so Wu had no opportunity to brief any opposition on this point.  Wu did point out in oral argument the more developed factual record in this case distinguishes it from cases like *Square D*.  As to whether there is a triable issue on Wu's manufacturing claim, Wu points to record evidence that the strut was manufactured by GM and had not yet been replaced:

- The strut specifications produced by GM with respect to the 2011 Malibu reference Part No. 15825422 as the part number for the Malibu's rear lid strut, indicating that strut in question was manufactured by GM.[46]

- Warranty documents produced by GM related to the repair also indicate that the strut was manufactured by GM.[47]

- There is also no record evidence that the Malibu's struts had ever been replaced prior to the accident.[48]

Wu also points to record evidence that the strut contained a manufacturing defect including:

- Testimony from Wu and another on-scene witness who saw the strut and described its appearance.[49]

- Photos of the strut taken immediately after the accident.

---

[44] *Hinckley v. La Mesa R.V. Center, Inc.*, 158 Cal. App. 3d 630, 642 (1984).

[45] *Notmeyer v. Stryker Corp.*, 502 F. Supp. 2d 1051, 1059 (N.D. Cal. 2007) (citing *Hinckly*, 158 Cal. App. 3d at 643 ("Where a product fails to such an extent that its examination can furnish no clue as to the specific part that failed, the facts (1) the accident occurred shortly after sale, (2) plaintiffs did nothing to bring about the accident, and (3) expert testimony suggests a defect in fact was responsible for the accident, allow the issue of whether defendants are strictly liable for plaintiffs' injuries to be submitted to the jury.")).

[46] *See* Docket No. 47-2, Ex. A.

[47] *See* Docket No. 47-4, Ex. C (documentation from GM replacing leaky strut).

[48] *See* Docket No. 47-1, Ex. B.

[49] *See* Docket No. 47-1, Exs. G, H.

9
Case No.: 5:13-cv-00188-PSG
ORDER GRANTING-IN-PART GM'S MOTION FOR SUMMARY JUDGMENT

- Expert testimony that "the "strut appears to have suffered prior fracture damage at the disconnected end" and that "prior damage may have been a result of a material or manufacturing defect that remained latent until shortly prior to this incident."[50]

- The fact that the strut had only been in service for less than a year and had less than twenty thousand miles of wear on it.[51]

- Repair records from November 2011, two months after the accident, indicate that a "faulty/leaked rear lid strut" was replaced.[52]

This is enough evidence to create a triable issue of fact as to whether the strut contained a manufacturing defect when it left GM's possession. GM's main objection to Wu's evidence, that Wu has not inspected the actual strut in this case, in unavailing. The court cannot see how Wu can be faulted on this score. Wu reached out to Alamo four days after the accident and requested the company preserve the strut and the vehicle.

In sum, a triable exists as to Wu's manufacturing defect claim. Summary judgment is not warranted.

**B.   Design Defect**

At summary judgment, the court must weigh whether Wu has marshaled enough evidence to create a triable question of fact for the jury as to whether the circumstances of the strut's failure "permit an inference that the product's design performed below the legitimate, commonly accepted minimum safety assumptions of its ordinary consumers."[53] GM argues that summary judgment is warranted on Wu's design defect claim because of the less than 0.1% replacement rate for Malibu

---

[50] Docket No. 47-15, Ex. A. at 8.

[51] *See* Docket No. 47-1, Ex. E, F (describing normal life span for subject struts as 17,700 cycles or 10 years or 100,000 miles).

[52] Docket No. 47-3, Ex. B (customer complaint that "trunk lid will not stay up when opened" referencing Part No. 15825422).

[53] *Soule*, 8 Cal. 4th at 568-69.

10
Case No.: 5:13-cv-00188-PSG
ORDER GRANTING-IN-PART GM'S MOTION FOR SUMMARY JUDGMENT

struts.[54] Even Wu's expert conceded that the warranty data on the 2011 Chevy Malibu did not support a finding that there was a design defect.[55]

Wu has not marshaled evidence sufficient to create a genuine issue of material fact as to whether there was a design defect related to the 2011 Malibu's trunk. Even if the strut had broken, the failure of one strut alone is insufficient to establish a design defect. It is not surprising that with more than a million Malibus on the road over the past five years, just under a thousand had their struts replaced for one reason or another. Ordinary Malibu drivers presumably have common expectations about how their Malibu's trunk struts should perform and, by in large, no record evidence suggests that struts design had performed below the legitimate, commonly accepted minimum safety assumptions of GM's ordinary consumers. Because a reasonable jury could only find that the car meets an average consumer's expectations, summary judgment on Wu's design defect claim is warranted.

### C. Failure to Warn

GM argues that summary judgment is warranted on Wu's failure to warn claim because (1) the risk was obvious and in plain view[56] and (2) Wu has conceded that he had not read the owner's manual.

Wu responds that GM's argument fails because GM (1) assumes that the struts were detached at the time Wu initially opened the trunk, (2) does not cite record evidence, and (3) ignores whether a triable "fact exists as to whether the alleged latent defect in the trunk was an

---

[54] Docket No. 52 at ¶ 8 ("In addition, Defendant GM's liability expert and 30(b)(6) representative Vic Hakim, P.E. testified at his deposition on November 25, 2013 and indicated in his expert report that there is a replacement rate of .96 incidents per thousand vehicles for the type of rear lid strut involved in this incident, which means that approximately one out of every thousand vehicles that uses this type of strut had a lid strut replaced due to warranty issues. (Hakim testified that there were over 1 million Chevy Malibus that used this type of lid strut between 2008-2012).").

[55] Counsel made this representation at the hearing on this motion.

[56] *See* Docket No. 46 at 10 ("If both struts were detached at that time, it was right in plain view for plaintiff to see.").

11
Case No.: 5:13-cv-00188-PSG
ORDER GRANTING-IN-PART GM'S MOTION FOR SUMMARY JUDGMENT

'obvious risk.'"[57] Wu points to his expert's testimony that the accident may have been caused by a latent defect in the trunk. And, by definition, a latent defect "is one that is hidden and not obvious."[58]

Wu's opposition does not produce evidence in support of several of the elements necessary to establish a prima facie failure to warn claim. Most glaringly, there is no record evidence before the court that "the lack of sufficient warnings was a substantial factor in causing the plaintiff's harm."[59] Because a reasonable jury could only find that the danger of the trunk closing on a consumer's digit was an open and obvious danger, GM had no duty to warn. Summary judgment is warranted on Wu's failure to warn claim.

**D. Negligence**

GM attempts to knock out Wu's negligence claim by arguing that Wu's separate claims for negligence and strict liability merge into one claim and "if the design and manufacture of a product is not defective than its manufacturer cannot be deemed negligent."[60]

Wu responds that the case law cited by GM is inapplicable because that case, *Lambert v. General Motors*, did not involve both a manufacturing defect and a design defect, and only involved a design defect.[61] In this case, Wu's allegation is that "GM was negligent by failing to inspect the vehicle, by failing to make the vehicle safe for its intended use, and by failing to warn foreseeable users of the vehicle of known dangers."[62]

---

[57] Docket No. 47 at 16.

[58] *Id.*

[59] *Tucker*, 2013 WL 1149717, at *12 (*quoting Rosa v. City of Seaside*, 675 F. Supp. 2d 1006, 1011 (N.D. Cal. 2009) (citing CACI 1205 [entitled "Strict Liability—Failure to Warn–Essential Factual Elements"])); *see supra* note 26.

[60] Docket No. 46 at 10.

[61] 67 Cal. App. 4th 1179, 1185 (1998) ("Where liability depends on the proof of a design defect, no practical difference exists between negligence and strict liability; the claims merge.").

12
Case No.: 5:13-cv-00188-PSG
ORDER GRANTING-IN-PART GM'S MOTION FOR SUMMARY JUDGMENT

Because the court finds that summary judgment is not warranted on the underlying manufacturing defect claims, it need not reach GM's arguments that the negligence claim merges with Wu's strict liability claims. Summary judgment is not warranted on Wu's negligence claim.

**IT IS SO ORDERED.**

Dated: January 10, 2014

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[62] Docket No. 47 at 16 (citing Docket No. 1 ¶ 60).